Byrns v. Shaw.

---

ARTHUR J. BYRNS

v.

ELIZA J. SHAW.

*Chattel Mortgages—Alleged to be Fraudulent as Against Creditors of Mortgagor—Attempted Revival of Stale Claims—Mortgage Good in Part—Husband and Wife.*

1.  While the taking of a note and chattel mortgage for a sum largely exceeding the indebtedness, from one who is known to be largely indebted to other parties, may be regarded as presumptive evidence of fraud, the presumption may be rebutted.

2.  Where a husband, who was largely indebted to other parties, executed to his wife a note and chattel mortgage for a valid indebtedness, and also included in the note and mortgage amounts formerly given to him by his wife out of her father's estate, which had never been regarded by the parties as a loan, in a suit of replevin brought by the wife to reclaim the mortgaged property, which had been levied on under judgments against the husband, this court holds that the mortgage was good for the amount of the valid indebtedness to the wife, it appearing that she had acted in good faith.

[Opinion filed December 12, 1892.]

Appeal from the Circuit Court of Kankakee County; the Hon. Alfred Sample, Judge, presiding.

Joseph B. Shaw married Eliza J. Messenger in 1875, and in 1876 her father, Norman Messenger, leased to the husband a farm of 120 acres for ten years at an annual rental of $1.25 per acre, Shaw to be paid at the end of the term by the father for all the improvements he should put on the farm. At the time the husband and wife commenced to operate the farm the father let the daughter have $300 cash, $200 of which she turned over to her husband. The father also at that time let the daughter have five head of horses, valued at $500, four cows valued at $100, eight head of steers valued at $160, farming tools and implements valued at $100, feed for teams valued at $80, all of which she turned over to her husband. Her father died in 1882, seized of 600 acres of land, which she and her brother divided, she taking in her part the particular 120 acres which had been leased to her husband. At that time there was due the husband for improvements, etc., $1,456, and he owed for rents. The husband's claim was not probated, nor was the rent paid, it being understood that the one should offset the other. In 1886 she let him have $200 more. In the fall of 1890, Shaw being largely indebted and pressed for payment by his creditors, procured to be drafted a chattel mortgage on all his personal property, worth about $4,000. It was

for $4,000 and was executed for the purpose of securing a loan from any person willing to advance the money. No name of a mortgagee was inserted in the mortgage; no name of a payee was inserted in the note. Failing to find one willing to advance the money, he, on the 23d of December, 1890, executed the chattel mortgage to his wife and she paid him thereon $300 at one time, $200 at another, and paid off a note in bank for him of $507. On being informed that there was some defect in the mortgage, a new one like the former was executed and recorded on the 5th of February, 1891. Two notes were executed by Shaw to his wife, dated Nov. 18, 1890, one for $3,300 due in eighteen months, one for $700 due in two years, which the mortgage described and was given to secure.

Appellant, as sheriff, levied upon the property by virtue of executions issued from judgments recovered against Shaw. Appellee, claiming the property under her mortgage, replevied. A jury was waived and the court found the issues for the plaintiff and entered judgment accordingly.

Messrs. H. K. WHEELER and B. F. GRAY, for appellant.

Messrs. H. LORING and O. G. BARTLETT, for appellee.

MR. JUSTICE HARKER. This was an action of replevin brought by appellee to recover personal property which had been levied on by virtue of executions against her husband. Her claim was based upon a chattel mortgage executed to secure the payment of two notes given by her husband to her for $4,000. It is insisted in behalf of the execution creditors that the claim of appellee and the manner of procuring the chattel mortgage were fraudulent; that it was a scheme concocted by husband and wife for the purpose of hindering and delaying the husband's creditors in the collection of their claims. Of the $4,000 represented by the notes, all but $1,007 was for alleged indebtedness existing long before the date of the chattel mortgage. A great portion of it was for stock and cash received from her father and her father's estate, which was used and expended upon the farm

occupied by her and her husband and which she fell heir to after her father's death. A careful consideration of the facts and circumstances, as disclosed by the evidence in the record, satisfies us that at the time appellee turned over to her husband the stock so used and the cash so expended by him, there was no intention on her part to charge him with it. When he received the stock neither party treated the transaction as a sale. No price was fixed; no time for payment made. When the cash was received, neither one treated it as a loan. At the time appellee's father died, Shaw had a claim against him of $2,244, $1,456 of which was for improvements upon the farm. He did not probate his claim. If he at the time owed $1,200 for rent, as claimed by appellee, one-half belonged to her as heir of her father's estate. It was arranged between appellee, her brother and Shaw that he should not probate the claim, and the administrator did not collect rent from him. Under the arrangement that was made appellee did not have a claim for $600 against her husband, but really saved to herself several hundred dollars.

We think no part of appellee's claim valid excepting $1,007, i. e., the $507 security debt paid and the $500 loaned. We make no doubt that at the time she accepted the note and mortgage she thought she had the right to make the stale claims raked up, basis in part for the notes. For her action in so doing we are not disposed to attribute to her bad faith.

While the taking of a note and chattel mortgage for an amount largely exceeding the indebtedness, from one whom the mortgagee knows to be indebted to other parties, may be regarded as presumptive evidence of fraud, the presumption may be rebutted. Appellee's mortgage lien was good so far as it extended to the indebtedness of $1,007. She was, therefore, entitled to the possession of the property under her mortgage, and the court correctly found the issues in her favor. After a sale she would, out of the proceeds, be entitled to enough to satisfy the $1,007 and interest and to pay the expenses of sale, etc.

We see no error of the court in refusing propositions of law submitted.                    *Judgment affirmed.*