## UNITED STATES MORTGAGE & TRUST CO. et al. v. CHICAGO & A. R. CO. et al.

### No. 4263.

Circuit Court of Appeals, Seventh Circuit.

May 2, 1930.

William Greenough, of New York City, for appellants.

Edward H. Blanc, of New York City, and Bruce Johnstone, of Chicago, Ill., for appellees.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The appeal is from a decree of foreclosure of three mortgages given upon property of appellee the Chicago & Alton Railroad Company. To designate parties and interests necessary to be referred to, we employ the nomenclature of the decree.

Appellee the Chicago & Alton Railroad Company (called consolidated company) is a consolidation of two railroads, one, the Chicago & Alton Railroad Company (called old railroad company), and the other the Chicago & Alton Railway Company (called old railway company). These are Illinois corporations; the old railroad company having been incorporated in 1861, and the old railway company in 1900. The consolidation was made under an Act of the state of Illinois approved and in force March 26, 1872. Articles of consolidation were filed March 14, 1906.

In September, 1899, the old railroad company gave a mortgage upon its property to secure a bond issue known as 3 per cent. refunding 50-year gold bonds (called refunding mortgage bonds), which mortgage, with two supplemental mortgages dated September 30, 1904, and March 16, 1905, respectively, are collectively called refunding mortgage, under which bonds have been issued and are outstanding to the amount of $45,350,000. The decree does not foreclose the refunding mortgage; the foreclosure being subject to that mortgage to the extent to which it attaches.

April 1, 1900, the old railway company authorized an issue of not exceeding $22,000,-000 of 3½ per cent. bonds, to be secured by its mortgage to appellee Farmers' Loan & Trust Company, as trustee. The bonds were issued and sold and are outstanding in the hands of numerous holders. Among the property conveyed by the mortgagor as security for these bonds was nearly all of the outstanding preferred and common stock of the old railroad company, which the old railway company had acquired, and a lease to the old railway company of April 3, 1900, for a term of 99 years from that date, made by the old railroad company, of all the latter's property. This mortgage is called first lien mortgage, under which designation there is also included in the decree a certain supplement thereto of June 19, 1906, to which reference will hereinafter be made.

In 1910 the consolidated company issued its bonds to the amount of $6,817,000, secured by its mortgage to appellants, as trustees, called improvement mortgage. These bonds were not sold, but the consolidated company pledged them as further security under a mortgage which it gave in 1912 to appellants as trustees, to secure an issue of its 6 per cent. bonds, amounting to $16,834,000, which mortgage is called general mortgage.

Bills to foreclose the first lien mortgage, the improvement mortgage, and the general mortgage, respectively, were filed, and were consolidated with a creditors bill whereunder a receiver had been appointed for the consolidated company; and the causes so consolidated are the subject-matter of the decree, of which the trustees under the improvement and the general mortgages are alone complaining.

Since the consolidation of the railroads there has been large increase in the rolling stock and other equipment of the consolidated company, and a small accession to the

trackage. Upon this subsequently acquired property a first lien is claimed under the first lien mortgage by virtue of the mortgage itself, the articles of consolidation, and the supplement of June 19, 1906. The trustees under the improvement and general mortgages contest this claim of the first lien mortgage, and assert that they have the superior lien upon the after-acquired property.

As between these parties, the decree awarded the prior lien thereon to the first lien mortgage.

We have not been favored with an opinion by the District Court save as its views on the issues may be inferred from its overruling the exceptions to and its approval of the special master's voluminous report and from the decree.

Besides his report, the special master filed what he termed a "memorandum," presenting quite elaborate discussion of his views on the questions involved. Neither side accedes to all the reasons which he advanced for all his conclusions, and much of the very ample briefs revolves about the alleged soundness or unsoundness of the special master's discussion.

The first lien mortgage, as originally given, made abundant provision for including the mortgagor's after-acquired property. In the special master's memorandum it was concluded that by the consolidation the force of this after-acquired property clause was expended; and the master reported (section 10, art. XII) that the after-acquired property clauses of the first lien mortgage did not survive the consolidation. The memorandum cites the opinion of this court in Metropolitan Trust Co., etc., v. C. & E. I. R. Co. et al., 253 F. 868, 871, where there was quoted with approval the statement in appellant's brief in that case that "ordinarily on the consolidation of two corporations the lien of the mortgage of the constituent does not spread to the property contributed by the other constituent, or to the after-acquired property of the consolidated company." The correctness of this is not disputed. Practically the same language was employed in the recent case of Guaranty Trust Co., etc., v. M. & St. L. R. Co. (C. C. A.) 36 F.(2d) 747.

The conclusion in the memorandum, and the finding in the report, sustaining the lien of the first lien mortgage on the after-acquired property, are based wholly on the supplemental mortgage of June 19, 1906, made by the consolidated company to the Farmers' Loan & Trust Company, as trustee. The supplemental mortgage recites the consolidation of the companies, and refers to various provisions of the original first lien mortgage, attaching a copy of that mortgage and of the articles of consolidation, which are made part of the supplemental mortgage. It then recites that, for the purpose of carrying out the intent of the original first lien mortgage and the articles of consolidation, and for other good and valuable considerations, the consolidated company, pursuant to a resolution of its board of directors, conveys to the trustee all its property, for the purposes set forth in the original first lien mortgage and the articles of consolidation; the consolidated company agreeing to perform all the obligations of the original mortgage and of the articles of consolidation. The property described is, with some exceptions, all that which belonged to both the constituent companies, and all branches and additions, etc., "now held or acquired or hereafter held or acquired for use in connection with said railroads or the business thereof"; and all franchises, etc.; engines, freight, passenger, and other cars and rolling stock; tools, implements, materials, and personal property "now owned or hereafter acquired by the Railroad Company for the purposes of said railroads." The language is broad and inclusive. The supplemental mortgage was duly executed, delivered, and recorded shortly after its date.

The property described in the original first lien mortgage and in this supplemental mortgage is substantially the same, and the original first lien mortgage conveying as it did after-acquired property, why does not this supplemental mortgage likewise convey it? Appellants urge against such conclusion, (1) the supplemental mortgage does not appear to have had the approval of two-thirds of the stockholders of the consolidated company, and is therefore void; (2) it is void for want of consideration.

As to the first, there is invoked chapter 114, par. 20, Revised Statutes of Illinois 1905, to the effect that concurrence of holders of two-thirds in amount of the stock shall be necessary to the validity of any railroad mortgage, which concurrence must be manifested by a certificate thereof filed in the recorder's office of each county in which the railroad runs. To this contention appellee trustee responds that the supplemental mortgage is not a mortgage in the sense that an original mortgage would be, but that it was made pursuant to those clauses in the original mortgage whereunder the mortgagor agrees to execute all instruments and assur-

ances as may from time to time be necessary to invest the trustee with the security contemplated by the original first lien mortgage, and that the supplemental mortgage is but such a deed or act of further assurance as contemplated by the original first lien mortgage, and as carried forward by the articles of consolidation by the two railroads, and that the consent of the stockholders was not, under such circumstances, necessary to be obtained.

The supplement, made long prior to the improvement and general mortgages, did not operate as an original conveyance, but was in further assurance of that lien which the original first lien mortgage and the articles of consolidation contemplated, and for which the first lien mortgage definitely provided, and was well understood by all then concerned. This being so, the sufficient authorization of the original first lien mortgage, as well as the articles of consolidation, was a sufficient authorization of this supplemental mortgage. While there appears no formal authorization by stockholders as specified in the statute, it is evident from the record (and the special master so found) that, at least indirectly, more than two-thirds of the stockholders did approve or ratify the supplement.

Appellee trustee further contends that the statutory requirement of the consent of two-thirds of the stockholders to the giving of a railroad mortgage is for the protection of stockholders only, and that stockholders alone may urge it. This contention is well supported by the Supreme Court of Illinois, as well as by federal authority. Thomas v. Citizens' Horse Ry. Co., 104 Ill. 462; St. Louis R. Co. v. Terre Haute R. Co., 145 U. S. 393, 12 S. Ct. 953, 36 L. Ed. 748; Hervey v. Illinois Midland Ry. Co. (C. C.) 28 F. 169; Galbraith v. First Nat. Bank, etc. (C. C. A.) 221 F. 386. Absence of the specific statutory concurrence in the supplemental mortgage by two-thirds of the stockholders can therefore avail appellants nothing.

In treating appellants' contention of want of consideration for the supplemental mortgage, the special master in his memorandum properly said: "I think it must be read as a connecting story so far as the question of consideration is concerned, and that the Supplemental Mortgage of 1906 cannot be construed or its validity investigated standing as a separate document, independent of what preceded and of what followed its execution."

The old railroad company had nearly 900 miles of line. Evidently with a view to change in its organization and refinancing,

the old railway company was incorporated March 31, 1900. It acquired about 89 miles of line, and about the same time, April, 1900, acquired a 99-year lease of the old railroad company's property. At the same time there was adopted by the board of directors of the old railway company a resolution that the company take such steps as may be advisable to acquire the railroad and property of the old railroad company "by way of consolidation, merger, or purchase," as authorized by the laws of the state of Illinois, and that to effectuate such purpose the stock of that company be acquired. Accordingly it acquired nearly all the outstanding shares of preferred and common capital stock of the old railroad company.

Thereupon the old railway company, as has been stated, gave the first lien mortgage securing the 3½ per cent. gold bonds to the amount of $22,000,000. Because the contemplated consolidation was, as stated in the "Plan for Consolidation," unavoidably delayed, steps to effect it were not begun till in December, 1905.

On February 13, 1906, the old railway company directors adopted a resolution requesting the trustee under the first lien mortgage to vote the old railway stock, then held as security by the trustee, in favor of the consolidation; and at the same meeting adopted a resolution to the effect that, after the consolidation, the officers of the consolidated company be authorized and directed to execute on its behalf, as the successor of the old railway company, such mortgage or conveyance in further assurance, so that the lien of the first lien mortgage of April 1, 1900, "shall properly and fully be, and be confirmed to be, a lien upon all the railroads, properties, rights, privileges, and franchises of the corporations so consolidated, and of such consolidated corporation. * * * And the directors of said consolidated corporation are hereby authorized to cause to be executed, acknowledged, delivered, and recorded such instruments or deeds of further assurance as may be deemed necessary to carry out the purpose and intent of the Articles of Consolidation by which said consolidated corporation shall have been formed, so that the rights of the holders of the 3½% First Lien 50 Year Gold Bonds of the Chicago & Alton Railway Company shall not be affected, and the lien or security of the indenture securing the same be impaired in any particular."

Copies of these resolutions were at once sent to the trustee of the first lien mortgage,

which thereupon inclosed its proxy to vote the stock for the consolidation. The stock was so voted and the consolidation duly effected.

A few weeks thereafter the board of directors of the consolidated company adopted a resolution directing the officers of the company to execute and deliver, and cause to be recorded, an instrument of further assurance to the trustee under the first lien mortgage, in the form of an attached copy of the supplement of June 19, 1906; and the supplement was accordingly executed, duly recorded, and delivered to the trustee.

We believe enough of the facts have been stated to make it plain that it was the intent of all concerned that the lien of the first lien mortgage should attach to consolidated property in case of consolidation, and that it was in pursuance and in consideration of such understanding that the supplemental mortgage of 1906 was given. This conclusion has added force when it is considered that the trustee of the first lien mortgage had it in its power to block the consolidation by refusing to vote for the consolidation the stock it held, without a definite undertaking that the lien of its mortgage be continued in all respects as it was before consolidation; and this would doubtless have been the trustee's course had not the consolidators agreed to invest the first lien mortgage with a lien upon all property, present and future, of the consolidated company, in all respects as it would have remained on the property of the mortgagor had the consolidation not taken place. In this alone inheres a substantial consideration for the supplemental mortgage.

In this view of the question of want of consideration for the supplemental mortgage, we deem it unnecessary to discuss the first lien mortgage trustee's contentions (a) that appellants are estopped to assert the want of consideration; and (b) that a junior mortgagee may not raise the question of the want of consideration for a prior mortgage.

The opinion in the Metropolitan Trust Co. Case (C. C. A.) 253 F. 868, supra, is much discussed in the briefs on both sides. The situation there was decidedly different from that here. The consolidation there was of two railroads, each subject to a mortgage with after-acquired property clauses. Upon foreclosure of these mortgages, long after the consolidation, each mortgage claimed a lien on the after-acquired property of the consolidated corporation. It was held to have been the intent that upon consolidation one of the divisional mortgages should become a closed mortgage upon the property to which it applied, without application to after-acquired property, and that the other divisional mortgage should remain open and be resorted to for the raising of further money, by issuing bonds thereunder, which should be equally secured with those already outstanding, upon the property on which the mortgage was given, and future acquired property of the consolidated corporation. The contended survival of the after-acquired property clause was thus in the one mortgage denied and in the other upheld.

Here there are no divisional mortgages; all are upon substantially the same property. The intent of the survival after consolidation of the after-acquired property clause of the first lien mortgage, while apparently plain enough from the mortgage itself and its history, becomes free of doubt with the giving of the supplement of 1906, and the circumstances attending its giving.

In the Guaranty Trust Case, supra, 36 F. (2d) 747, 759, after stating the general rule that the after-acquired property clause of a railroad mortgage will not survive subsequent consolidation, the opinion proceeds: "This rule, however, is subject to qualifications. There is no legal impediment to contracting for a survival of this after-acquired property clause, so that in the final analysis it simply becomes a question of contract, or perhaps, more correctly, a question of the intention of the contracting parties. If the surrounding circumstances and the contracts of the parties show that it was the intention of the parties to the original mortgage that the after-acquired property clause should embrace property acquired by the mortgagor's successor by a consolidation, sale, or otherwise, the property acquired by the successor company should be subject to the lien of after-acquired property clauses of the original mortgage." Citing authorities which amply sustain the text.

The supplemental mortgage was the culmination of the purpose to subject the after-acquired property of the consolidated company to the after-acquired property clauses of the first lien mortgage; and its execution, delivery, and recording, years before the improvement and general mortgages were given, in our judgment fully effected this purpose as against these mortgages.

Apart from the general application here of the after-acquired property clauses, appellants seriously object to that part of the decree which awards to the first lien mortgage

the prior lien on certain additions to railroad lines. These are described and the reasons for their inclusion in the first lien of the first lien mortgage are stated, in the following extract from the special master's memorandum: "Among the items on which the Refunding Mortgage Trustee insists upon a lien as an accession or appurtenance are the three small parcels of road referred to in pages 22–24 of the stipulation. One of these is the line from Eldred to Titus, 7.76 miles, more or less, constructed by the Consolidated Company between 1912 and 1914. The other is a line from Bierd to Schoper, 3.47 miles, more or less, constructed by the Consolidated Company between 1917 and 1919 and running to a large mine of the Standard Oil Company of Indiana, which required railroad facilities. Third is the line extending from Titus to East Hardin, a distance of 3.91 miles, more or less, constructed by the Receivers between 1922 and 1924. An examination of the map and of the resolutions and documents supporting the construction of these small branches shows that they are insignificant in size and value as compared to the entire line of the Railroad Company. I think they may be regarded as accessions or appurtenances which were necessary and indispensable to the conduct of the business of the Railroad. They were built out of general funds to meet a growing business and developing conditions. It is not suggested that a railroad may not develop or enlarge its lines by these small branches or feeders, and I think they are definitely under the first lien of the Refunding Mortgage, the First Lien Mortgage being a second lien thereon."

In article third of the original first lien mortgage it is provided: "The Railway Company agrees and covenants that this indenture is and will always be kept a first lien upon all the premises and property described in the granting clauses hereof, now owned by the Railway Company and upon all property hereafter acquired by it in connection with such premises and property, and upon all renewals and replacements of such property, and all additions, switches, side-tracks, betterments and improvements thereto, but such lien shall not attach to new railroad lines or branches hereafter acquired."

The last clause makes a specific and definite exception to the application of the lien of the mortgage to new railroad lines or branches to be thereafter acquired. No distinction is made between long lines and short ones, nor as to the manner of their acquisition —whether by construction, purchase, or otherwise.

As to the contention of their being "appurtenances" of the railroad, and therefore not within the excepting clause, there is significance in the comment of the Supreme Court upon that term, as applied to mortgaged property, in the case of Humphreys v. McKissock, 140 U. S. 304, 11 S. Ct. 779, 781, 35 L. Ed. 473, where the court said: "Under the term 'appurtenances,' as used in the mortgage in question, only such property passes as is indispensable to the use and enjoyment of the franchises of the company. It does not include property acquired simply because it may prove useful to the company, and facilitate the discharge of its business. A distinction is made in such cases between what is indispensable to the operation of a railway and what would be only convenient. Bank v. Tennessee, 104 U. S. 493, 496 [26 L. Ed. 810]."

It may be assumed that, generally, branches and extensions are deemed to be useful else they would not be constructed or otherwise acquired. Circumstances are conceivable wherein a short extension of track may be indispensably necessary for the continued operation or use of the railroad, or some substantial part of it, in which case such an excepting clause might not have application; but there is no evidence here of any such condition or relation. The extensions were doubtless made to secure additional business for the road, just as would be the case of any extension to a new town or industry. We find nothing in the record to suggest that these additions, however small, should be excepted from the application of the very broad excepting clause of article third. Be these new lines long or short, they fall within the classification of "new railroad lines or branches"; and, being distinctly excepted from the after-acquired property clauses of the original first lien mortgage, they do not fall within the after-acquired property clause of the supplement of 1906. As between the here contending interests, it was error to award the first lien mortgage a lien on these extensions.

Appellants complain of so much of the decree as awards the first lien mortgage a prior lien upon certain securities of the consolidated company. The decree makes disposition of a large amount of securities, most of which belonged to the old railroad company prior to the consolidation. Without discussing further the after-acquired property provisions of the mortgage, we are satisfied that the first lien mortgage, with its Supplement, was given a lien on the securities of both companies, as well as those of the con-

solidated company, and on after-acquired securities of the latter.

The briefs leave us in some confusion as to the real contentions of the parties respecting these securities. It appears that some securities had been pledged under the general mortgage, as to which the decree awarded to appellants the first lien. As to such there is no controversy. We can see no reason for applying to the securities' any other or different rule than is applied to the other property—present or after-acquired. So far as the decree disposes of the securities as between these mortgage interests, we see no reason for disturbing it.

■ There remains to be considered appellants' contention that the proceeds of the general mortgage bonds were applied to reimburse the consolidated company for payments it had made on various acquisitions, after the consolidation, of rolling stock and other equipment; and that on all such the general mortgage is, as against the first lien mortgage, a first lien, or is in any event entitled to subrogation to the extent that the proceeds of general mortgage bonds contributed to discharge equipment liens. The usual manner of acquirement of equipment was under some form of railroad equipment trust or lease, retaining title in the vendor of the equipment until payment therefor had been fully made. Frequently the railroad negotiated its short time notes to meet payments on equipment and other charges. From time to time, for such payments as were deemed to be proper capital charges, general mortgage bonds were taken down and sold, and the funds realized paid into the railroad treasury.

Voluminous and complicated figures and accounts are in evidence to indicate the history of each acquisition of equipment and its contended relation to general mortgage bonds which were issued. To separately set out and discuss each of this long series of transactions would be quite impracticable. Their general purport sufficiently appears from section XXXII of a stipulation of April 19, 1928, between the parties in interest, which is:

"That the proceeds of sale of the bonds issued under the General Mortgage went into the general treasury of the Consolidated Company, where they were mingled with other funds of the Consolidated Company, including proceeds of sale of short term notes and other securities, loans, advances, and revenues derived from operating and other income of the Consolidated Company.

"That out of the aggregate of such mingled funds in such general treasury were paid from time to time capital expenditures, expenditures for redemption of securities and other principal payments (including payments of equipment trust notes and bonds), interest, guaranteed dividends, salaries, rentals, taxes, operating expenses and other corporate expenses, without any actual or attempted segregation of any particular elements in said general treasury funds for any particular purpose. That no particular bank or bank account was used out of which to make any particular class of said payments, nor was any money placed in any particular bank or bank account for a specific or particular purpose."

The payment of installments upon each of such equipment purchases extended over a considerable number of years, and after final payment the equipment trusts or leases were canceled and surrendered to the railroad company. In some instances, after cancellation and surrender the general mortgage trustees procured conveyance by the lessor, or by the trustee under the equipment lease or trust, of the items of equipment covered thereby.

The lien of the first lien mortgage did not remain suspended until final payment under the lease or equipment obligation, but attached to the interest of the consolidated company as current payments were made out of its general funds, regardless of the augmentation of these general funds through sale of general mortgage bonds. Wade v. Chicago, etc., R. Co., 149 U. S. 327, 13 S. Ct. 892, 37 L. Ed. 755; New England Water Works Co. v. Farmers' Loan & Tr. Co. (C. C. A.) 136 F. 521.

We are in accord with the special master in his holding that out of this course of dealings the general mortgage trustee did not acquire a lien on equipment as against the lien which accrued under the after-acquired property clauses of the first lien mortgage, and was not subrogated to the rights of the lessors or equipment trustees. Métropolitan Trust Co. v. C. & E. I. (C. C. A.) 253 F. 868, supra; Contracting, etc., Co. v. Continental Trust Co. (C. C. A.) 108 F. 1; Evans v. Kister (C. C. A.) 92 F. 828; McGourkey v. Toledo & Ohio Ry. Co., 146 U. S. 536, 13 S. Ct. 170, 36 L. Ed. 1079.

In the Guaranty Trust Case, 36 F.(2d) 747, 762, supra, the Eighth Circuit Court of Appeals seems to have reached a different conclusion respecting some of the equipment there involved, its comment being: "The holding of the [District] court in so decreeing is sustained by the authorities, and we concur therein." The opinion then cites four cases, from our examination of which we are unable to perceive how they support the proposition.

It seems to us that, on the contrary, so far as they apply, they support our view thereon as above stated.

In one of them, Commercial Trust Co. v. Chattanooga Ry. Co., 281 F. 856, 863 (D. C.), all that seems to bear on the proposition is found in paragraph 14, as follows: "The fact that the car hoist equipment and new cars may have been purchased, double track laid and poles erected by the Railway & Light Co. with the proceeds of bonds issued under the Railway & Light mortgage of 1909 to the Fidelity Trust Co., does not create a countervailing equity which will prevent the lien of the Maryland and Commercial mortgages from attaching thereto. Mississippi Valley Trust Co. v. Southern Trust Co. ([C. C. A.] 8th Circ.) 261 F. 765, supra, at page 768. And see Galyeston Co. v. Cowdrey, 11 Wall. 459, supra, at page 480 [20 L. Ed. 199]. This is not a case of subsequently acquiring property subject to liens or equities which arise in the act of purchase or acquisition, as in Harris v. Bridge Co. ([C. C. A.] 6th Circ.) 90 F. 322, supra, at page 328, and United States v. New Orleans Railroad, 12 Wall. 362, 365, 20 L. Ed. 434."

In Westinghouse E. & M. Co. v. Brooklyn R. T. Co., 276 F. 152, 164 (D. C.), the court said: "As between the parties (i. e., B. R. T. and the 1902 trustee), it does not make any difference whether property was deposited with the trustee in accordance with one theory or the other or both. As between the two trustees, however, only that property can escape the lien of the 1895 mortgage which was acquired with bonds which had been authenticated and delivered for the purpose of enabling B. R. T. to acquire property from a third party, as distinguished from transactions where B. R. T. acquired property, not with 1902 bonds nor with their proceeds, but with general funds or in some way other than with the 1902 bonds or their proceeds, and thereafter obtained bonds from the 1902 trustee for such property."

It was held that the junior mortgage would have a lien if property was acquired with authenticated bonds delivered to the mortgagor "under circumstances where the authentication and delivery of bonds, the acquisition of property, and the pledge with the trustee were all parts of the same transaction." This was not so in the case at bar, where the subsequently acquired equipment was paid for out of the railroad's general funds, and from time to time thereafter bonds issued to replenish its treasury.

In Mississippi Valley Trust Co. v. Southern Trust Co., 261 F. 765 (8 C. C. A.) it appears that a railroad gave a mortgage with after-acquired property clauses, and thereafter sold all its property to another railroad. The question was whether the after-acquired property clauses were a prior lien on lines and equipment built and acquired by the purchasing company, as against a mortgage which the purchasing company gave to raise funds to build and obtain the subsequently acquired lines and equipment.

The court held that the original company, by selling out its property, "went out of business and was no longer a going concern," and that "the purchaser did not take over its franchise as a successor," that a vendee who takes title by ordinary purchase is not a successor, and that the property thereafter acquired by the purchasing company is not subject to the after-acquired property lien of the mortgage of the vendor company. The Metropolitan Trust Co. Case, supra, was cited, and attention called to the fact that the after-acquired clause there was differently phrased, and that in that case there was consolidation of railroad companies and not purchase by one from the other.

The last of the cases, Farmers' Loan & Trust Co. v. Denver L. & G. R. Co., 126 F. 46 (C. C. A.), also shows circumstances quite different. The railroad company having given a mortgage with an after-acquired property clause, and desiring to acquire another piece of property for its use, made an agreement whereby this property was placed in the hands of a trustee, to be conveyed to the railroad when the agreed purchase price was paid. The purchase price becoming due, the vendor demanded payment, and a third person was induced to advance the money to pay the vendor, taking the note of the railroad and the trustee therefor, secured by a conveyance of the property to a new trustee. The question was whether the after-acquired mortgage clause became a first lien on this property as against the one who advanced the money to pay off the original vendor. The court very properly held that, the railroad never having paid for or acquired title to the property, the after-acquired property clause of the mortgage did not attach.

From our examination of the record we are satisfied that, under the practice here followed, the issuing of the general mortgage bonds cannot fairly be considered as part of transactions in the acquirement of the additional equipment, but rather as a refinancing of, inter alia, the obligations incurred from

time to time by the consolidated company in its purchase of equipment, whereby the equitable and legal title thereto inhered in the purchaser before the general mortgage bonds had any part in the transactions.

We direct that the decree of the District Court be modified to conform with the foregoing views; that is to say, by excluding from the lien of the first lien mortgage the above-named extensions and additions of about 15 miles of railroad lines. As so modified, the decree is affirmed. Appellants shall pay 75 per cent. and appellees 25 per cent. of the costs of this court.