138 F.2d 520 (1943)
In re PEORIA BRAUMEISTER CO.
SECURITY DISCOUNT CO.
v.
WESNER.
No. 8272.
Circuit Court of Appeals, Seventh Circuit.
November 4, 1943.
*521 J. H. Schwartz, Edward A. Cooper, Norman H. Nachman, and Schwartz & Cooper, all of Chicago, Ill., for appellant.
Ira J. Covey and Max J. Lipkin, both of Peoria, Ill., for appellee.
Before SPARKS, MAJOR, and KERNER, Circuit Judges.
KERNER, Circuit Judge.
This is an appeal from an order of the District Court affirming the referee's order disallowing the secured claim of the appellant in the sum of $2,400.
On May 6, 1941, the bankrupt, Peoria Braumeister Company, delivered a chattel mortgage to the appellant to secure its chattel mortgage note of $3,000. In return for this mortgage appellant gave bankrupt's president a check for $2500. Repayment of the loan was to be over a seven months' period at the rate of $100 per week. Payments totaling $600 were made, so that on July 7, 1941, the unsatisfied obligation was $2,400. A fire occurred on bankrupt's premises shortly before August 1, 1941, destroying some of the tangible assets included in the chattel mortgage. Then, on August 1, 1941, bankrupt filed its voluntary petition for arrangement under Chapter XI of the Bankruptcy Act, 11 U.S. C.A. § 701 et seq. The loss caused by the fire was covered by insurance, and the proceeds thereof are now available to creditors.
On August 22, 1941, appellant filed proof of secured claim in the sum of $2,400, attaching its note and chattel mortgage thereto. The debtor filed written objections to this claim, alleging that the mortgage was invalid because no resolution had been passed by the directors or stockholders authorizing the execution of the mortgage. Although no specific reference to the Illinois statutes was made in the written objections, the referee and all parties understood that reference was made to § 72 of The Business Corporation Act, Ill.Rev. Stat.1941, ch. 32, par. 157.72.
On December 6, 1941, the debtor filed its withdrawal of arrangement and its consent for adjudication in bankruptcy. Five *522 days later, it was adjudicated a bankrupt. Thereupon, Charles A. Wesner, trustee in bankruptcy, John Kridner, director, chief stockholder, and creditor, and Independent Milwaukee Brewery Company, a creditor, adopted the debtor's objections to the instant claim. Hearings were held and testimony was taken. On April 2, 1942, the referee made findings of fact, conclusions of law, and entered a decree disallowing the claim as a secured claim for $2,400 and allowing it as a general unsecured claim for $1,936.70.
In his certificate to the District Court, upon appellant's petition for review of the referee's order, the referee included an additional finding that Virgil Kridner, who owned about 47½ per cent of the stock of the debtor, had no notice or knowledge that the debtor proposed to execute the chattel mortgage or that he acquiesced therein. The District Court, without opinion, overruled appellant's motion to strike said additional findings of fact from the referee's certificate and affirmed the referee's order disallowing the secured claim. It is from this ruling that Security Discount Company appeals.
First of all, we feel constrained to express our view that it was improper for the referee to make additional findings of fact in his certificate after the petition for review had been filed. It should be noted that the referee made his order on April 2, 1942; that the appellant filed its petition for review on April 13, 1942; and that the additional findings to the effect that Virgil Kridner had no notice of, and did not acquiesce in, the proposed mortgage, were made on September 24, 1942. Neither § 39, sub. a(8) of the Bankruptcy Act,[1] 11 U.S.C.A. § 67, sub. a(8), nor § 39, sub. c, 11 U.S.C.A. § 67, sub. c, which deals with the review of a referee's order, providing that the petition for review "* * * shall set forth the order complained of and the alleged errors in respect thereto," contemplates that a referee may make additional findings of fact some five months after a petition for review has been filed. Instead, § 39, sub. c, requires that the petition for review set forth the alleged errors committed by the referee. This is obviously impossible if the referee is allowed to make additional findings after the petition is filed. Furthermore, the additional findings are not supported by the evidence because John Kridner testified that all the shareholders and directors, thereby including his son, Virgil Kridner, had agreed that the loan should be made; and the trustee introduced no evidence to the contrary. Accordingly, the motion to strike the additional findings should have been granted. But the failure to grant it was not reversible error, as the case has developed, for the reason that appellee does not now rely on the lack of approval by Virgil Kridner, and thus failure to comply with § 72 of The Business Corporation Act, as grounds for invalidating the chattel mortgage here in suit. We need not speculate on whether this defense has been waived because appellee has concluded that noncompliance with the act was not fatal to the mortgage on the strength of the authorities cited.[2] Where, as here, a family corporation was involved, and it is apparent that John Kridner was the dominant force in the corporation at all times, particularly in obtaining this loan, perhaps appellee's counsel concluded that actual approval by the stockholders, however informal, was sufficient. We need express no opinion on the point. Whatever the reason, the fact is that appellee does not now insist that the mortgage should be invalidated for lack of Virgil Kridner's approval.
The present position of appellee, which was taken by the referee in his findings and conclusions, is that the mortgage and note are invalid and voidable under Section 67, sub. d(2) (a), (b), and (c).[3] The referee found that the bankrupt "was in failing *523 circumstances on May 5, 1941, and probably at that time was overwhelmingly insolvent, and unable to meet its obligations as they matured," and that "the chattel mortgage was executed without fair consideration."
Since the referee's findings of fact are presumed to be correct and should be accepted by the court unless clearly erroneous, General Order 47 in Bankruptcy, 11 U.S.C.A. following section 53, and Rules 52(a) and 53(e) (2) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, particularly where, as here, they have been adopted by the District Court, Seeley v. Hunt, 5 Cir., 109 F.2d 595, 596, we have only to determine whether there is any basis in the evidence for such findings, or, stated inversely, whether appellant has demonstrated the lack of support for the referee's findings so clearly that we may abandon his findings. On the strength of the record, we cannot say that the referee's findings are clearly erroneous. The schedules attached to the petition for arrangement showed that the debtor owed debts amounting to $35,893.09 and had assets valued at $28,817.73, but the referee found that included in the assets was an item for debts due on open account in the sum of $12,667.73 which were practically worthless. Claims were filed in the proceeding aggregating $42,937.52. In its petition, the debtor proposed to pay all priority claims, costs of administration, and 25 per cent to the general unsecured creditors. When the debtor was unable to live up to its offer, it consented to being adjudicated a bankrupt. The referee found that the great portion of the liabilities of the debtor at the time when it filed its petition were also liabilities at the time the note and mortgage were made. Hence it seems to us that the referee's findings as to the insolvency of the debtor were not without foundation.
In the light of the background and circumstances of this transaction, we believe the referee was justified in finding that appellant did not give a fair consideration for the obligation received in exchange. The referee knew that what constitutes "fair" consideration has been statutorily defined[4] and concluded that the $2,500 advanced for the $3,000 obligation was not fair. The referee found that the mortgagee-appellant had failed to substantiate its contention that the $500 difference represented costs and service charges involved in making the loan.
Although we accept the referee's findings of fact, we do not agree with his conclusion that appellant's claim should be allowed only as a general unsecured claim. Rather, we think it should be allowed as a secured claim in the sum of $1,900 plus $36.70 interest, i.e., the amount advanced ($2,500) less the amount repaid ($600). We arrive at this conclusion by virtue of Section 67, sub. d(6) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. d(6), which provides that a bona fide lienor who, without actual fraudulent intent, has given a consideration less than fair for such lien, may retain the lien as security for repayment.[5] It is undisputed that the money advanced was to be, and actually was, used in the regular operation of the business. *524 The referee made no finding that actual fraud was involved here, and the evidence and testimony appearing in the record negative the idea that appellant was guilty of actual fraud.
There is no evidence in the record to suggest collusion or intent to defraud the debtor's creditors. The evidence is undisputed that prior to the time this loan was made, appellant had never had any dealings with the bankrupt corporation. This was unquestionably an arm's length negotiation by a Chicago lender with a Peoria borrower. While the record shows that appellant's president made a trip to Peoria to see what security was offered for the loan, it does not show the extent of the investigation. We think it is clear that bankruptcy was not in contemplation at the time the loan was made, and that appellant hoped to profit by the repayment of its loan rather than by the enforcement of the lien taken on the property.
There is nothing in the record to cast suspicion on the motives of either party. Indeed, there is every reason to believe that this loan was being made to a corporation which was temporarily hard pressed. An examination of the schedules of the debtor, filed together with its petition for arrangement, bears out our conclusion that the loan was made in the expectation that it would be repaid out of the earnings of the business over the seven months' period. These schedules show a discrepancy between assets and liabilities of some seven thousand odd dollars, the assets being valued at $28,817.73 and the liabilities at $35,893.09; they further show that one large item of liability was $6,400 owed by the debtor to John Kridner in back salary. It may well have been the lender's thought at the time the loan was made that this obligation would not be pressed, inasmuch as John Kridner, president of the debtor corporation, sought the loan on behalf of the corporation and was the overwhelmingly dominant force therein. It is clear that Kridner was trying very hard to make the corporation successful. To say that the appellant was guilty of actual fraud on the debtor's creditors, in the light of this situation, seems unjustified. It certainly would be very unjust to declare a creditor guilty of actual fraud simply because he failed to discover that some of the assets of the corporation, namely, debts due on open account, were of little value. Perhaps appellant was negligent, but negligence is not identical with actual fraud.
Actual fraudulent intent requires a conscious realization by the lienor that taking the lien will work a fraud on the debtor's creditors. This is absent from the present case. Hence the "proviso" in the "except clause" of Section 67, sub. d(6) of the Bankruptcy Act is applicable here. This section was taken from Section 9(2) of the Uniform Fraudulent Conveyance Act, and represents the well-settled rule that a grantee in a fraudulent conveyance who is not guilty of actual fraud but is chargeable with knowledge of such facts that the law holds him guilty of constructive fraud is entitled to protection to the extent of the consideration which he paid if the obligation is set aside. Morris v. Flenner, 25 F.2d 211; Byrns v. Shaw, 45 Ill.App. 281; People's Savings & Dime Bank & Trust Co. v. Scott, 303 Pa. 294, 154 A. 489, 79 A.L.R. 129. We believe that the theory of the "proviso" clause in Section 67, sub. d(6), is that a nonfraudulent mortgagee should keep his lien as security for repayment to the extent of the amount actually advanced.
The order is set aside and the cause is remanded for further proceedings in accordance with the views herein expressed.
NOTES
[1] "Referees shall * * * prepare promptly and transmit to the clerks certificates on petitions for review of orders made by them, together with a statement of the questions presented, the findings and orders thereon, the petition for review, a transcript of the evidence or a summary thereof, and all exhibits; * * *."
[2] Royal Indemnity Co. v. American Bond & Mortgage Co., 289 U.S. 165, 170, 53 S. Ct. 551, 77 L.Ed. 1100; In re Norcor Mfg. Co., 7 Cir., 97 F.2d 208; United States Mortgage & Trust Co. v. Chicago & A. R. Co., 7 Cir., 40 F.2d 386, 389; In re Robin Bros. Bakeries, D.C., 22 F.Supp. 662, 663.
[3] The statute reads as follows: "Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition in bankruptcy or of an original petition under chapter 10, 11, 12, or 13 of this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or (b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital, without regard to his actual intent; or (c) as to then existing and future creditors, if made or incurred without fair consideration by a debtor who intends to incur or believes that he will incur debts beyond his ability to pay as they mature; * * *." 11 U. S.C.A. § 107, sub. d(2) (a-c).
[4] Section 67, sub. d(1) (e) of the Bankruptcy Act, 11 U.S.C.A. § 107, subd. (1) (e) reads, "consideration given for the property or obligation of a debtor is `fair' (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred * * * or (2) when such property or obligation is received in good faith to secure a present advance * * * in an amount not disproportionately small as compared with the value of the property or obligation obtained."
[5] "A transfer made or an obligation incurred by a debtor adjudged a bankrupt under this title, which is fraudulent under this subdivision d against creditors of such debtor having claims provable under this title, shall be null and void against the trustee, except as to a bona-fide purchaser, lienor, or obligee for a present fair equivalent value: Provided, however, That such purchaser, lienor, or obligee, who without actual fraudulent intent has given a consideration less than fair, as defined in this subdivision d, for such transfer, lien, or obligation, may retain the property, lien, or obligation as security for repayment."